COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| F-STAR SOCORRO, L.P., F-STAR PROPERTY MANAGEMENT, INC., JNY, L.P., JNY II, L.P., and F-STAR MANAGEMENT, L.L.C., | § § § | No. 08-06-00009-CV Appeal from the |
| Appellants, | § § | 171st Judicial District Court |
| v. | § | of El Paso County, Texas |
| THE CITY OF EL PASO, | § § | (TC# 2001TX040) |
| Appellee. | § | |

**O P I N I O N**

The City of El Paso ("the City") brought suit to recover unpaid property taxes from

Appellants F-Star Socorro, L.P., F-Star Property Management, Inc., JNY, L.P., JNY II, L.P., and

F-Star Management, L.L.C.[1]  The City introduced into evidence a certified tax statement showing

the amount owed by F-Star for the year 2002.  The trial court decided the case in favor of the

City, using the amount of delinquent taxes and the amount of abstractor's fees listed in the

certified tax statement.  F-Star appealed the trial court's ruling, raising six issues on review.  We

affirm the trial court's judgment.

The City alleged that over $700,000 in taxes were delinquent on 145 acres of land owned

by F-Star for the years 1994-1997 and 2001-2002.  F-Star filed a general denial.  A bench trial

was held on August 19, 2005.

The City introduced into evidence a certified tax statement showing the amount due for

---

[1] We will refer to Appellants collectively as "F-Star."

2002 taxes assessed against a portion of F-Star's property. According to the statement, F-Star owed the City $516,543.90 on the property as of October 2002. The statement was prepared on August 19, 2005, the date of trial. The statement was signed by Juan Sandoval, the tax assessor-collector of the City of El Paso, and both pages of the statement bear his office's seal. F-Star objected to the statement's admission, arguing that the statement was not properly authenticated and that it was prepared for litigation. The trial court admitted the statement over F-Star's objection.

The trial court found in favor of the City, ordering F-Star to pay the City $552,617.24 in delinquent taxes. According to the trial court's findings of fact, $506,796.86 of those taxes came from the year 2002, while the rest came from the years 1994-1997. The trial court also ordered F-Star to pay the City $1,667 in abstractor's fees.

F-Star raises six issues on appeal. In Issue One, F-Star argues that the trial court erred in granting judgment for the City because there was no competent evidence indicating that F-Star owed $506,796.86 in property taxes for the year 2002. In Issue Two, F-Star argues that the trial court erred in admitting the certified tax statement into evidence because the statement was inadmissible hearsay. In Issues Three and Four, F-Star argues that the trial court failed to consider evidence that F-Star paid its taxes in full in November 2003, as well as evidence of tax abatements that should have reduced the amount of property tax owed. In Issues Five and Six, F-Star argues that the trial court erred in granting judgment for the City for additional collection expenses, because there was no evidence that the City was entitled to these expenses.

### Certified Tax Statement

In its first two issues, F-Star argues that the certified tax statement was inadmissible

hearsay, and that there was no evidence supporting the trial court's judgment for property taxes from 2002.

If an appellant challenges the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate that no evidence exists to support the trial court's finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In conducting a no-evidence review, the appellate court should view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). An appellate court will sustain a legal-sufficiency on "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law on evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). The test for abuse of discretion is whether the trial court acted without reference to any guiding principles, i.e. whether it acted in an arbitrary and unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Owens-Corning*, 972 S.W.2d at 43. Moreover, an appellate court should not reverse a trial court's evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP.P. 44.1(a)(1).

Rule 803(8) of the Texas Rules of Evidence permits public records to be admitted into

evidence, even though they are hearsay. TEX.R.EVID. 803(8). Rule 803(8)(C) permits admission of public records that set forth "factual findings resulting from an investigation made pursuant to authority granted by law." TEX.R.EVID. 803(8)(C). Normally, even admissible evidence must be independently authenticated or identified. TEX.R.EVID. 901. However, there are exceptions for documents that are considered self-authenticating, including public records bearing a signature and the seal of any department or subdivision of the United States. TEX.R.EVID. 902(1), 902(4).

F-Star argues that the certified tax statement is not a public record under Rule 803(8) of the Texas Rules of Evidence. F-Star does not explain why the statement is not one of the three types of admissible public documents listed in Rule 803(8). Instead, F-Star argues that the statement "was prepared for the sole purpose of litigation . . . ." But delinquent-tax records may be admitted even if they are prepared solely for the purpose of litigation, as long as they are properly authenticated. *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 829 (Tex.App.--Corpus Christi 1989, writ denied). The findings in the certified tax statement appear to result from the tax assessor-collector's investigation of F-Star, as outlined in Rule 803(8)(C). Therefore, we find that the certified tax statement is a public record under the terms of Rule 803(8).

F-Star also argues that the certified tax statement does not meet the self-authentication requirements of Rule 902. In its brief, F-Star states that "[t]here is no seal on" the statement. In fact, the seal of the Office of the assessor-collector of the City of El Paso appears on both pages of the statement. Granted, the seal is somewhat faint, so it does not appear on photocopies of the statement. But on the original statement supplied by the City, the seal is quite visible and tactile. Moreover, the first page of the statement bears the signature of Juan Sandoval, the tax assessor-

-4-

collector of the City of El Paso. The statement also certifies that Mr. Sandoval is the custodian of the City's tax records. We find that the certified tax statement meets the self-authentication requirements of Rule 902, and that the trial court did not abuse its discretion by admitting it.

The proper admission of the certified tax statement refutes F-Star's argument that there was no evidence supporting the trial court's finding of delinquent property taxes from 2002. A delinquent-tax roll or a certified copy of a delinquent-tax roll constitutes prima facie evidence that the amount of tax alleged to be delinquent is the correct amount. TEX.TAX CODE ANN. § 33.47 (Vernon 2008). The certified tax statement in this case is a record of delinquent taxes, constituting prima facie evidence that F-Star owed property taxes for 2002. Therefore, we find that there was some evidence to support the trial court's judgment on those taxes. Accordingly, Issues One and Two are overruled.

### Collection Expenses

In Issues Five and Six, F-Star argues that there is no admissible evidence that the City is entitled to additional collection penalties under Section 33.07(a) of the Tax Code.

Section 33.07(a) permits a taxing authority to collect an additional penalty for delinquent taxes when the authority contracts with an attorney in order to collect the taxes. TEX.TAX CODE ANN. § 33.07(a). The amount is limited to the amount of compensation specified in the contract between the attorney and the taxing authority. *Id*.

Under Section 33.47(a), a copy of a delinquent-tax record constitutes prima facie evidence that: (1) the taxing authority "has complied with all requirements of law;" (2) the listed amount of delinquent taxes is correct; and (3) the listed amount of penalties and interest due on the tax is correct. *Id*. at § 33.47(a). In other words, when a taxing authority introduces a copy of

its delinquent-tax record, it establishes its prima facie case as to every material fact necessary to establish its cause of action. *Davis v. City of Austin*, 632 S.W.2d 331, 333 (Tex. 1982).

We assume that, in Issues Five and Six, F-Star is referring to the $1,667 in abstractor's fees that the trial court assessed in addition to the $506,796.86 in property taxes from 2002. $1,667 is the amount listed in the "Abstract Fees" row of the certified tax statement, discussed above. F-Star seems to proceed from the assumption that the statement was inadmissible, as they do not mention the statement in this section of their brief.

As discussed above, we find that the trial court properly admitted the certified tax statement into evidence. We also find that the certified tax statement constituted prima facie evidence that the City complied with the statutory requirements of Section 33.07(a). Likewise, the statement constituted prima facie evidence that $1,667 was the correct amount of abstractor's fees to be assessed against F-Star. Therefore, there was some evidence that the City was entitled to $1,667 in abstractor's fees. Accordingly, Issues Five and Six are overruled.

## Payment and Offset Defenses

In Issue Three, F-Star argues that the trial court erred in its ruling because F-Star paid its 2002 property taxes in full in November 2003. In Issue Four, F-Star argues that the trial court erred in its ruling because the City, in its calculations, failed to consider abatement agreements between F-Star and various taxing authorities.

Payment is an affirmative defense under the Texas Rules of Civil Procedure. TEX.R.CIV.P. 94. The right to an offset of payment is also an affirmative defense. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Columbia Medical Center of Las Conlinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 862 (Tex.App.--Fort Worth 2003, pet.

-6-

denied). An affirmative defense must be pled in a responsive pleading, or the defense will be waived. *First Nat'l Bank in Dallas v. Zimmerman*, 442 S.W.2d 674, 675-76 (Tex. 1969). Moreover, if a defendant wishes to allege payment as an affirmative defense, Rule 95 requires him to "file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same . . . ." TEX.R.CIV.P. 95.

In this case, F-Star filed only a general denial; it did not allege payment or offset in any responsive pleading. Therefore, we find that F-Star waived its payment and offset defenses. Accordingly, Issues Three and Four are overruled.

Having overruled each of Appellants' issues for review, we affirm the trial court's judgment.

July 3, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.